FIREMAN'S FUND INS. CO. v. GLOBE NAV. CO. et al.

(Circuit Court of Appeals, Ninth Circuit.  May 15, 1916.)

No. 2630.

INSURANCE ☞607—MARINE INSURANCE—LIABILITY OF INSURER—INSURANCE OF FREIGHT ADVANCED BY SHIPPER.

   Pursuant to the terms of the charter party, a charterer made an advance on freight, deducting the cost of insurance, and taking the receipt on draft of the master. Thereupon it insured the freight in its own name to the amount of the advance. The ship became disabled in a storm, the voyage was abandoned, and the insurer paid the insurance to the charterer, taking an assignment of the master's receipt. *Held*, that it could not recover thereon against the shipowner, for whose ultimate benefit the insurance was effected, through the charterer as its agent.

   [Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1512, 1513; Dec. Dig. ☞607.]

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
    234 F.—18·

Appeal from the District Court of the United States for the Northern Division of the Western District of Washington; Jeremiah Neterer, Judge.

Suit in personam in admiralty by the Fireman's Fund Insurance Company against the Globe Navigation Company and S. P. Weston, it's trustee in bankruptcy, on an instrument in writing executed by A. W. Swenson, master of the American schooner Wm. Nottingham, as agent for said Navigation Company. Decree for respondents, and libelant appeals. Affirmed.

Edward J. McCutchen, Ira A. Campbell, and McCutchen, Olney & Willard, all of San Francisco, Cal., and Ballinger, Battle, Hulbert & Shorts, of Seattle, Wash., for appellant.

Clise & Poe, of Seattle, Wash., for appellees.

Before GILBERT and MORROW, Circuit Judges, and RUDKIN, District Judge.

MORROW, Circuit Judge. On June 3, 1911, W. R. Grace & Co. chartered the American schooner Wm. Nottingham owned by the respondent, Globe Navigation Company. Under the terms of the charter party it was provided that:

"A sufficient amount for ship's ordinary disbursements at port of loading, say not exceeding one-third of the freight, to be advanced by charterers, if required by captain, on account of freight under this charter party, subject to a charge of 7 per cent. to cover interest, insurance, and commission; advance to be indorsed on captain's copy of charter party and all the bills of lading."

No advance was indorsed on captain's copy of the charter party, nor was any such indorsement made on any of the bills of lading; but the charterer, before the vessel set sail, advanced to the captain the sum of £1,650, British sterling ($8,032.20). Upon receipt of that sum, the captain gave W. R. Grace & Co. an instrument in writing, in words and figures as follows:

"£1,650/o/o Stg.                              Seattle, Sept. 27, 1911.

"At sight after arrival of the American schooner Wm. Nottingham, under my command, at the port of Callao, or any other place at which her voyage may terminate, I promise to pay to the order of W. R. Grace & Co. the sum of sixteen hundred fifty pounds (£1,650/o/o) British sterling, or approved bankers' demand bills on London, for freight advance received at Seattle, Wash., as per receipt given, for the payment of which I hereby pledge my vessel and her freight; and I hereby assign to the legal holder of the obligation all my lien and claim against freight, vessel, and owners, with power to take in my name any and all steps necessary to enforce the same; and my consignees at port of discharge are hereby instructed to pay this obligation, and deduct the amount thereof from the freight due said vessel. In case of nonpayment, the holder shall also be entitled to the benefit of all liens in law, equity, or admiralty which the master or owners of the vessel may be entitled to against any part of the cargo or its owners for freight, or any other charges whatsoever. This claim to have priority of payment over all others that may be presented against the said freight and vessel. My vessel is now lying at the port of Astoria, Or., loaded with cargo Oregon pine and ready to sail for Callao, Peru.

"Signed in triplicate; one being accomplished, the others to stand void.

"A. W. Swenson,
"Master Am. Schr. Wm. Nottingham."

On October 6, 1911, W. R. Grace & Co. took out insurance on the advance mentioned in the foregoing writing, with Fireman's Fund Insurance Company, the libelant herein; premium for such insurance being paid by W. R. Grace & Co. for the respondent, the former deducting that amount from the sum advanced under the terms of the charter party. On October 2, 1911, the schooner sailed from the port of Westport, Or., for Callao, Peru, with a full cargo of lumber for delivery at the latter port. She never reached her destination. Shortly after sailing she became water-logged and was dismasted off the Columbia river. The vessel was abandoned at sea by her master, officers, and crew, was subsequently picked up by a tug and towed to the port of Astoria, and was later towed to the port of St. Johns, Or., where her cargo that had not been washed overboard was discharged and delivered to W. R. Grace & Co., the owner of the cargo, and the voyage terminated. Claim was thereupon made to the libelant by W. R. Grace & Co. for the insurance, amounting to $7,920, which was paid by the libelant; and in consideration of the payment of the insurance W. R. Grace & Co. assigned to libelant all its right, title, and interest in and to the "interest, whether on account of salvage therefrom or on any other account whatever." This libel was thereafter filed by the insurance company against the respondent, based upon the instrument signed by the master of the schooner; dated September 27, 1911.

The libelant alleged, among other things, that on February 14, 1912, for a valuable consideration, W. R. Grace & Co. assigned unto the libelant all of its right, title, and interest in and to its claim for the repayment of the said £1,650; that the libelant was the owner and holder of the claim and of the lien; that demand for payment of the indebtedness had been made by libelant upon respondent, and payment thereof had been refused; and that the amount ($8,032.20) remained unpaid and was due the libelant by respondent. It was further alleged that during the time mentioned the schooner Wm. Nottingham was owned by the respondent, and Swenson was the agent of the respondent in the execution of the instrument and in the receipt of the advance freight mentioned.

The answer of respondent admits that during all the times mentioned in the libel it was the owner of the schooner Wm. Nottingham, and that Swenson was the master thereof, but denies, among other things, that at any time Swenson was the agent of respondent in the execution of the instrument described in the libel, denies that he ever received the advance against freight mentioned in the libel, denies that W. R. Grace & Co. became the owner and holder of the instrument for a valuable consideration, or at all, denies that respondent has any knowledge that on February 14, 1912, or at any other time, for a valuable consideration, or at all, W. R. Grace & Co. assigned to the libelant all of its right, title, and interest in and to the said instrument described in the libel, and denies that it has knowledge as to whether said libelant is the owner and holder of said claim, and asks strict proof of same. The answer alleges, further, that:

"For a consideration therein [charter party] agreed upon, and as a part of the consideration therefor, it was agreed that one-third of the freight would be advanced and paid by charterers on account of the freight under said charter party, subject to a charge of 7 per cent. to cover interest, insurance, and commission; that when said schooner was fully laden and ready for sea said W. R. Grace & Co. advanced to this respondent the sum of £1,650 British sterling, and said W. R. Grace & Co. thereupon under the terms of said charter party insured the same, and charged the cost or premium therefor to this respondent, and respondent paid the same by allowing said W. R. Grace & Co. to deduct the same from one-third of the freight due under said charter party, said sum of £1,650 British sterling being said one-third of freight, less said deduction of 7 per cent. as provided in said policy [charter party] for insurance charges and interest."

The libelant is an insurance company, and it appears in evidence that on October 6, 1911, it issued a certificate of insurance to W. R. Grace & Co. in the sum of $7,920 on advances valued at sum insured. On the margin of the certificate of insurance is indorsed the following:

"This insurance is to cover against all the perils enumerated in the policy which may prevent the collection of said draft in whole or in part, including general average, salvage, and/or other charges arising from sea peril to which the advances hereby insured may be subjected. The ownership of draft to be deemed sufficient proof of interest."

It appears that the libelant did not write the insurance based upon the master's receipt or draft of September 27, 1911, and did not know of its existence until the loss had occurred. After the loss had occurred and the insurance had been paid, libelant took an assignment of the receipt or draft for the purpose of securing a return of the insurance; but the insurance had been paid in accordance with the terms of the policy, written by itself upon the receipt of a premium paid by the respondent through Grace & Co., acting for the respondent in the transaction. Had the voyage of the schooner been completed and the cargo delivered to the consignees, the amount of the receipt or draft would have been deducted by them from the freight due the vessel as advance or prepaid freight, and the respondent would have sustained no loss. The failure of the schooner to make the voyage and deliver the cargo resulted in a loss to the respondent of the freight on the cargo, including the advance or prepaid freight. The loss arose from a sea peril, to which the advance or prepaid freight insured in the policy was subjected. To protect the respondent against this loss, the libelant, upon the payment of the regular premium, issued its policy of insurance payable to Grace & Co. or order. It was paid by the libelant on the order of Grace & Co. upon the risk and for the loss for which the libelant had issued its policy.

E. T. Ford, the submanager of Grace & Co. at Seattle, in the state of Washington, testified that in placing the insurance with the libelant:

"We were acting for the Globe Navigation Company, to whom we charged and collected the amount of the premium. * * * We chartered this vessel and agreed to pay a certain amount of freight for her. At the same time we agreed to make a certain amount of advance against the freight, which we did. The advance we insured, and, in so doing, we practically stepped into the position of the Globe Navigation Company in insuring our own freight, with

the understanding that, if they insured the freight, they would not insure more than the balance over the amount of this advance."

The question, in this case, is not whether the shipper, upon the loss of his cargo, can recover advanced freight from the owner of the vessel, either as advanced freight or upon the receipt or draft of the master; but the question is: Can the insurance company avoid its liability to the insured because the insurance was effected through the shipper as agent for the shipowner? We think not. It seems to us to require no discussion of cases to show that, upon the contract of insurance, the loss should remain with the libelant.

This conclusion renders it unnecessary to discuss the question of whether libelant mistook its remedy in suing upon the master's receipt or draft, instead of advance or prepaid freight. We do not think the libelant is entitled to recover upon either aspect of the case.

The decree of the District Court is affirmed.